UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DANNY R ALEJANDRO, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 4:11-CV-4281 |
| | § | |
| WILLIAM  STEPHENS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Petitioner Danny R. Alejandro, an inmate incarcerated in the Texas Department of Criminal Justice – Correctional Institutions Division ("TDCJ-CID"), seeks habeas corpus relief pursuant to 28 U.S.C. § 2254.  Petitioner challenges his conviction for burglary of a habitation from the 339th Criminal District Court of Harris County, Texas, for which he received a fifty-year sentence.[1]  (Docket No. 1.)  Before the Court is Respondent's Motion for Summary Judgment.  (Docket No. 68.)  After considering all of the pleadings and the entire record, the Court will grant Respondent's motion and dismiss this case.

## PROCEDURAL HISTORY

Petitioner was indicted on the charge of burglary of a habitation (Cause Number 1003546) in November 2004 (Docket No. 13-7 at 51), and on the charge of felon in possession of a firearm (Cause Number 10026952) in May 2005.  (*Id.* at 52.)  Petitioner pleaded guilty to the firearm possession offense.  (*Id.* at 89-90.)  Petitioner pleaded not guilty to the burglary offense but a

---

[1]  Petitioner originally also challenged his concurrent conviction on the charge of possession of a firearm by a restricted person, to which he pleaded guilty.  However, on January 27, 2013, the Court granted Respondent's Motion to Dismiss as Successive Petitioner's claims regarding his firearm conviction.  (Docket No. 27.)  Thus, the only claims considered here relate to Petitioner's burglary conviction.

jury found him guilty on August 12, 2005.  (Docket No. 15-39 at 75-76.)  On August 15, 2005, the state district court sentenced Petitioner to fifty years confinement in TDCJ-CID on each conviction, with the sentences to run concurrently.  (*Id.*)

Petitioner's convictions were affirmed on direct appeal.  *See Alejandro v. State*, No.14-05-00904-CR, 2006 WL 3743073 (Tex. App.—Houston [14th Dist.] 2006, pet ref'd) (unlawful possession of firearm by a felon); *Alejandro v. State*, No.14-05-00905-CR, 2006 WL 1766171 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (burglary of a habitation).  The Fourteenth Court of Appeals for the State of Texas summarized the facts supporting Petitioner's burglary conviction as follows, in pertinent part:

> In the early morning hours of October 11, 2004, deputies with the Harris County Sheriff's Department investigated a weapons disturbance at the home of Nora Alejandro, [Alejandro]'s sister-in-law.  Nora's daughter, Juanita Harris, who was [Alejandro]'s girlfriend, also lived at the house.  She had argued with [Alejandro] earlier that evening.
>
> At about 2:30 a.m., Juanita awakened Nora because she had heard banging and yelling.  When Nora went outside to investigate, she encountered [Alejandro] in the backyard.  Nora stated that [Alejandro] put a gun to her chest and demanded to know where Juanita was.  Although Juanita was hiding in the bathroom, Nora denied that she was at home and turned to go back inside.  She did not invite [Alejandro] to come inside.  Still pointing the gun at her, [Alejandro] followed Nora into the house and repeatedly inquired as to Juanita's whereabouts.  When Nora insisted that she did not know where her daughter was, [Alejandro] threatened to kill both Nora and Juanita.  He then asked: "Do you think I'm playing?" and fired a bullet into the kitchen floor near Nora's feet.  Juanita testified that she heard [Alejandro] shouting at her mother and called 9-1-1.  She called 9-1-1 again after hearing the gunshot.
>
> Deputy Leon W. Carroll, Sr. was one of the first deputies to arrive at the scene.  Carroll testified that he saw a pick-up truck pulling out of the driveway; [Alejandro] was driving, and he had a passenger in the front seat.  Carroll ordered the men to exit the truck at gunpoint because he had been advised that the suspect was armed.  Carroll testified that once the men were handcuffed and seated in patrol cars, he entered the house.  Carroll observed a crater-like impact site on the kitchen floor, indicating that a bullet had struck it.  He also interviewed Nora and Juanita about the incident.

At the suppression hearing, Carroll testified that speaking with Nora and Juanita had confirmed his suspicion that a weapon had been used in the offense.  Carroll stated that after the interviews, he returned outside and peered through the window of [Alejandro]'s truck.

In an open console in the front seat area, Carroll saw a pistol that matched Nora's description of [Alejandro]'s gun.  Although [Alejandro] did not give consent to search the truck, Carroll seized the weapon.  Carroll stated that he did not know if other deputies had searched the truck while he had been inside the house, and he did not notice whether the console had been open before he entered the house.  After [Alejandro] was arrested, deputies performed a full search of the car and discovered pills and a magazine containing live rounds.

[Alejandro] testified that he had neither stashed a gun inside his truck nor opened the console.  He stated that several deputies had immediately "swarmed" the truck, searched it while Carroll was inside the house, and left the console open.

The judge denied [Alejandro]'s motion to suppress, finding that Carroll's testimony was credible.  The judge also stated that notwithstanding the other deputies' actions, Carroll "had an independent legitimate basis for finding probable cause to arrest [Alejandro] . . . and, therefore, had the right to search the vehicle incident to arrest."  The jury convicted [Alejandro] of burglary of a habitation, and the judge sentenced him to fifty years' incarceration.

*Id.* at *1-2.  The Texas Court of Criminal Appeals refused petitions for discretionary review in each case.  (*Id.*)

Petitioner's state habeas application challenging the firearm possession conviction was denied without written order on the trial court's findings without a hearing on July 30, 2008, by the Texas Court of Criminal Appeals.  (Docket No. 13-7 at 2.)  His federal habeas petition challenging the same conviction was denied on July 2, 2009.  *Alejandro v. Quarterman*, Civil Action No. H-08-2809, 2009 WL 1971331 (S.D. Tex. July 2, 2009), *cert. denied*, 131 S.Ct. 167 (2010.)

On May 13, 2008, Petitioner filed a state habeas application in the 339th Criminal District Court of Harris County, Texas, challenging his burglary of habitation conviction.  Harris County

Clerk website.[2]   The state district judge designated the issues and ordered Petitioner's trial attorneys to file an affidavit summarizing their actions as counsel.  (Docket No. 13-10 at 21-23.) An attorney affidavit was filed on December 17, 2009.  *Id.*  On September 2, 2010, Petitioner filed a supplemental state habeas application.  *Id.*  Petitioner subsequently filed four motions for leave to file an application for writ of mandamus, which the Texas Court of Criminal Appeals denied.  Texas Courts Online.[3]  Petitioner's state habeas application challenging his burglary conviction was denied without written order on the trial court's findings without a hearing on October 23, 2013.  Texas Courts Online.[4]

Here, Petitioner seeks federal habeas relief from his burglary conviction on the following grounds:

1. Petitioner's due process rights were violated by the State's inordinate delay in responding to his state habeas application.

2. The state district court violated the Double Jeopardy Clause by accepting Petitioner's guilty plea to the firearms offense and his not-guilty plea to the burglary offense because a necessary element of the burglary offense is the use of a deadly weapon, *i.e.,* the firearm.

3. Petitioner was denied reasonably effective assistance of counsel at trial and on appeal.

4. The state district court abused its discretion in denying his motion to suppress evidence obtained by an illegal search and seizure.

5. Petitioner was denied due process by the State's use of perjured testimony at trial.

---

[2] Viewed February 10, 2015.

[3] Viewed February 10, 2015.

[4] *See* http://www.search.txcourts.gov/Case.aspx?cn=WR-44,756-10&coa=coscca  (viewed February 10, 2015.)

6.      Petitioner was denied due process during the punishment phase of trial because the face of the record showed that the second enhancement paragraph was not true.

7.      The evidence was insufficient to support Petitioner's conviction.

(Docket Nos. 1-2.)

Respondent moves for summary judgment asserting that Petitioner has not satisfied his burden of proof, his claims are meritless, and some of his claims are unexhausted and procedurally barred.  (Docket No. 68.)  Petitioner has filed a reply (Docket Nos. 72 & 73) and the motion is now ripe for adjudication.

<u>STANDARD OF REVIEW</u>

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial.  *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992).  Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).  The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant.  *United States v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

The writ of habeas corpus provides an important, but limited, examination of an inmate's conviction and sentence.  *See Harrington v. Richter*, – U.S. –, 131 S. Ct. 770, 787 (2011) (noting that "state courts are the principal forum for asserting constitutional challenges to state

convictions").   The Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified as amended at 28 U.S.C. § 2254(d), "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt"; it also codifies the traditional principles of finality, comity, and federalism that underlie the limited scope of federal habeas review.   *Renico v. Lett*, – U.S. –, 130 S. Ct. 1855, 1862 (2010) (quotations omitted).

AEDPA "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in [28 U.S.C.] §§ 2254(d)(1) and (d)(2)."   *Richter*, 131 S. Ct. at 784.   As previously mentioned, the Court of Criminal Appeals addressed the merits of Petitioner's claims on habeas review.   Therefore, this Court can only grant relief if "the state court's adjudication of the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law.'"   *Berghuis v. Thompkins*, – U.S. –, 130 S. Ct. 2250, 2258 (2010) (quoting 28 U.S.C. § 2254(d)(1)).   The focus of this well-developed standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."   *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).   Thus, AEDPA serves as a "guard against extreme malfunctions in the state criminal justice systems," not as a vehicle for error correction.   *Richter*, 131 S. Ct. at 786 (citation omitted); *see also Wilson v. Cain*, 641 F.3d 96, 100 (5th Cir. 2011).   "If this standard is difficult to meet, that is because it was meant to be."   *Richter*, 131 S. Ct. at 786.

"Review under § 2254(d)(1) focuses on what a state court knew and did."   *Cullen v. Pinholster*, – U.S. –, 131 S. Ct. 1388, 1399 (2011).   Reasoning that "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court," *Pinholster* explicitly held

that "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.*, 131 S. Ct. at 1399, 1400.   Thus, "evidence introduced in federal court has no bearing on § 2254(d)(1) review." *Id.*, 131 S. Ct. at 1400.

While Rule 56 of the Federal Rules of Civil Procedure, which governs summary judgment proceedings, applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas rules.  *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).   Therefore, Section 2254 (e)(1), which mandates that findings of fact made by a state court are presumed correct, overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the non-moving party.   *Id.*   Unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct.  *Id.*

<u>ANALYSIS</u>

I.  <u>Inordinate Delay</u>

Petitioner initially sought federal habeas corpus relief on the ground that his state habeas petition had been pending for more than five years without resolution.  (Docket No. 1 at 16.) However, after the present petition was filed, the state court denied Petitioner's state habeas application without a hearing or written order, which amounted to a ruling on the merits.  <u>Texas Courts website</u>.[5]   Moreover, records show that Petitioner's state habeas proceedings were delayed at least partially by Petitioner's filing of a supplemental petition and numerous

---

[5] *See* http://www.search.txcourts.gov/Case.aspx?cn=WR-44,756-10&coa=coscca  (viewed February 10, 2015.)

mandamus petitions.  Therefore, Petitioner is not entitled to relief here based on the state court's delay in resolving his state habeas petition.


## II.  Double Jeopardy

Petitioner argues that his convictions for burglary with intent to commit aggravated assault and felon in possession of a firearm are duplicative and, therefore, violate the Double Jeopardy clause.  (Docket No. 2 at 18-20.)  Petitioner previously raised this claim in his federal habeas petition challenging his firearms conviction.  In that case, the Court rejected this claim based on its conclusion that "[t]he essential elements of the crime of aggravated burglary are different from the essential elements of the offense of possession of a firearm."  *See Alejandro*, 2009 WL 1971331 at *6.  Because this claim was previously adjudicated on the merits, the prior resolution is controlling here and the Court will not further address the issue in this case.

## III.  Ineffective Assistance of Counsel

Petitioner raises numerous claims of ineffective assistance by both his trial and appellate counsel.  (Docket No. 2 at 20-40; Docket No. 2-1 at 3-17; Docket No. 2-2 at 2-6, 7-14.)  The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  U.S. Const. amend. VI.  A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance.  *Id*. at 687.  The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim.  *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688.  In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy.  *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996).  In addition, mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.  *Id.* at 694.  To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.  *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled.  *Id.*

Applying this standard, the Court addresses each of Petitioner's ineffective counsel claims in turn.

A.  <u>Failure to Challenge the Indictment</u> (Claim 4)

Petitioner argues that his trial counsel rendered ineffective assistance by not challenging the indictment for being duplicitous and multiplicitous.  (Docket No. 2 at 20-23.)  Petitioner cites caselaw noting various problems with duplicitous indictments, including the potential for inadequate notice to defendants of the charges against them, prejudicial evidentiary rulings at trial, creation of an inadequate trial record, and risk of a non-unanimous verdict being rendered.

However, Petitioner has not shown that any of these those concerns are relevant to his conviction.  The mere fact that the indictment could have given rise to such concerns is not sufficient to show that Petitioner's trial counsel rendered ineffective assistance by failing to object to the indictment.  Simply put, Petitioner has not shown that he suffered any actual prejudice as a result of his counsel's failure to object to the indictment.  Thus, this claim is without merit.

### B.  Failure to Challenge Sufficiency of the Evidence (Claims 5, 6 and 24)

Petitioner claims that his trial and appellate counsel rendered ineffective assistance by failing to challenge the sufficiency of the evidence.  (Docket Nos. 2 at 24-28; 2-2 at 12-14.)  However, Petitioner cannot obtain federal habeas relief on this basis unless he shows that the evidence presented at trial was, in fact, insufficient to support his conviction.  As discussed in regard to Petitioner's evidentiary sufficiency claim below (Part VII, *infra*), ample evidence was presented at trial to support Petitioner's conviction.  Thus, Petitioner's claims that his counsel rendered ineffective assistance by not challenging the sufficiency of the evidence at trial or on appeal are without merit.

### C. Failure to Challenge Use of Prior Convictions for Enhancement (Claims 7-8)

Petitioner claims that his trial and appellate counsel rendered ineffective assistance by failing to challenge the use of certain prior convictions for enhancement purposes.  (Docket No. 2 at 29-33.)  Specifically, Petitioner claims that his felony DWI conviction in Cause No. 563930 was not a valid prior offense for purposes of a habitual offender sentence because under the law in effect when he pleaded guilty to DWI on September 6, 1991, the conviction could only be used for enhancement purposes for a period of ten years.  Petitioner asserts that although the law was changed prior to his burglary conviction to allow use of felony DWI convictions for

enhancement purposes beyond the original ten year window, application of the new rule to his present conviction amounted to an *ex post facto* punishment.  Petitioner claims that his trial counsel rendered ineffective assistance by not researching and raising this issue before advising Petitioner to plead "true" to the enhancement paragraph, causing him to receive a much longer sentence than he otherwise would have.  (Docket No. 2 at 32.)

Both the Supreme Court and the Fifth Circuit have held that the use of prior convictions for enhancement purposes does not violate the *ex post facto* clause.  *Gryger v. Burke*, 334 U.S. 728, 732 (1948); *see also United States v. Rasco*, 123 F.3d 222, 227 (5th Cir. 1997), *cert. denied*, 522 U.S. 1083 (1998); *United States v. Saenz-Forero*, 27 F.3d 1016 (5th Cir. 1994); *Perkins v. Cabana*, 794 F.2d 168, 169 (5th Cir.), *cert. denied*, 479 U.S. 936 (1986). As the Supreme Court has explained, such enhancement "is not to be viewed as either a new jeopardy or additional penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one." *Gryger*, 334 U.S. at 732.  Because Petitioner cannot make a valid argument that use of his 1991 DWI conviction for enhancement purposes amounted to an *ex post facto* punishment, his trial counsel did not render ineffective assistance by failing to raise this issue.  Thus, these claims have no merit.

D. Failure to Investigate Juanita Harris's Testimony (Claim 9)

Petitioner claims that his trial counsel rendered ineffective assistance by failing to investigate Juanita Harris's testimony before trial.  Petitioner asserts that further investigation would have allowed counsel to challenge the credibility of Ms. Harris's testimony regarding what occurred on the night of the crime and the incriminating statements Petitioner purportedly made to Ms. Harris during a jail visit.  (Docket No. 2 at 33-35.)

"[C]ounsel has a duty to make a reasonable investigation of the defendant's case or to make a reasonable decision that a particular investigation is unnecessary." *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997). In evaluating the reasonableness of the investigation conducted by counsel, the Court must bear in mind that:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 690-91. Thus, as with any ineffective assistance of counsel claim, the petitioner must prove that counsel's alleged failure to investigate "resulted in an actual and substantial disadvantage to the course of his defense." *Baldwin v. Maggio*, 704 F.2d 1325, 1333 (5th Cir. 1983). "In order to satisfy the prejudice prong of *Strickland*, [a defendant] must show 'more than the mere possibility of a different outcome.' [He] must present 'evidence of sufficient quality and force to raise a reasonable probability that,' had it been presented to the jury, the outcome would have been different." *United States v. Drones*, 218 F.3d 496, 504 (5th Cir. 2000) (citations omitted).

Petitioner offers no support for his contention that the outcome of his trial would likely have been different if his trial counsel had more thoroughly investigated Ms. Harris' testimony. Petitioner's primary basis for this claim is his personal opinion that Ms. Harris "was predisposed to fabrication in order to meet her and her mother's needs" and "had a problem with telling the truth." (Docket No. 2 at 34.) However, Petitioner offers no evidence to support these banal assertions. The only disadvantage Petitioner attributes to the alleged failure to investigate is that

his "trial counsel was unable and unprepared to make any strategical [sic] decisions" regarding testimony that Petitioner had confessed to the crime.  (Docket No. 72-1 at 31.)  But Petitioner does not explain how his trial counsel reacted to this testimony, nor has he shown that the reaction was not based on reasonable professional judgment.  Thus, Petitioner is not entitled to relief on this claim.

### E.   Failure to Retain an Expert Tile Investigator (Claims 10 & 13 part 1)

Petitioner asserts that his counsel rendered ineffective assistance by failing to retain an expert witness to rebut testimony regarding damage to a tile floor that the state asserted was caused by Petitioner firing a gun into the floor.  The state's firearms examiner testified that the damage appeared consistent with "a projectile fired into the floor," but that she could not conclusively determine the cause, much less link it to the gun found in Petitioner's truck.  (R.R. Vol. 4 at 79-90.)  Despite this relatively benign testimony, Petitioner asserts that an "independent tile investigator" should have been retained because such an expert might have raised additional doubt as to whether the tile damage was caused by a bullet.

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative."  *Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009).  To prove that counsel was ineffective for failing to call a witness, "the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."  *Id.; see also Evans v. Cockrell,* 285 F.3d 370, 377 (5th Cir.2002).

Petitioner does not identify any expert who could have been appointed by the trial court, does not allege with specificity what the investigation would have revealed or the substance of the missing expert testimony, and fails to explain how the results of the investigation or the testimony of such a hypothetical expert tile investigator would have changed the outcome of his trial.  In addition, there is no evidence that any expert witness was available to testify at trial, much less that the expert witness's testimony would have been favorable to Petitioner.  Nor has Petitioner shown "a reasonable probability that, but for counsel's failure to request an expert, the jury would have had a reasonable doubt concerning his guilt."  *Earhart v. Johnson,* 132 F.3d 1062, 1068 (5th Cir. 1998).  Even if an "expert tile investigator" had testified that the damage to the floor was not caused by a bullet, it would not have been sufficient to create a reasonable doubt as to Petitioner's guilt, given the other evidence presented.  Thus, Petitioner's ineffective assistance claim based on failure to retain an expert tile investigator is entirely speculative and without merit.

### F.  <u>Failure to Call Additional Witnesses</u> (Claims 11 & 13 part 1)

Petitioner claims that his trial counsel rendered ineffective assistance by failing to investigate or call as witnesses others who were present when the gun was recovered from Petitioner's truck. Although Petitioner refers to potential "alibi witnesses," he has not identified anyone who would have testified that he was somewhere else when the crime occurred.  Instead, it appears that Petitioner is merely referring to additional testimony regarding his location when the truck was searched and the circumstances surrounding the search.  (Docket No. 2 at 38, 45.)  However, such testimony would have been relevant, if at all, only to the admissibility of the gun, not to Petitioner's guilt.  Petitioner's bare assertion that such testimony would have "altered the evidentiary posture of this case" (Docket No. 2 at 38) is not sufficient to state a viable habeas

claim based on uncalled witnesses.  *See Day v. Quarterman,* 566 at 538.  Thus, Petitioner is not entitled to relief on this claim.

## G.  Failure to Preserve Error (Claim 13 part 3)

Petitioner asserts that his trial counsel failed to properly preserve errors for appellate review by not moving for a mistrial after certain objections were sustained.  Petitioner claims that there are eleven such instances in the record, however, he does not specifically identify them in his petition or supporting memorandum; nor does he explain how each would have been cause for a successful appeal.  (Docket No. 2-1 at 6-7.)  In his summary judgment response, Petitioner admits his failure to specifically identify each of the relevant objections, but he does not rectify the failure.  Although Petitioner specifically refers to testimony about a shell casing and whether it matched the gun found in Petitioner's truck, he does not cite any objection to this testimony that could have warranted a motion for a mistrial.   (Docket No. 72-1 at 32-33.)   Because Petitioner has not made a serious attempt to support this claim, it must be deemed abandoned or waived.  *See Woods v. Cockrell*, 307 F.3d 353, 357 (5th Cir. 2002) (a statement of a legal conclusion, without a serious attempt to argue or substantiate the issue, is a waiver or abandonment of the issue).

## H.  Failure to Object to Denial of Right to Allocution (Claim 13 part 4)

Petitioner complains that he was denied the right of allocution at his sentencing hearing. However, the right of allocution is not a right granted or protected by the federal constitution, and its denial presents no cognizable federal habeas issue.  *See United States v. Reyna*, 358 F.3d 344, 349 (5th Cir. 2004) ("[T]he right of allocution is deeply rooted in our legal tradition and an important, highly respected right; nonetheless it is neither constitutional nor jurisdictional.").  To the extent petitioner asserts a violation of state law, no ground for federal habeas relief is

presented.  *See Fuller v. Johnson*, 158 F.3d 903, 908 (5th Cir. 1998) (holding that a federal habeas court does not review violations of state law unless the violation renders the trial as a whole fundamentally unfair).  As Petitioner neither argues nor shows that the denial of the right of allocution rendered his sentencing hearing fundamentally unfair, he is not entitled to habeas relief on this claim.

I.  <u>Failure to Request Jury Instruction on Lesser Included Offense</u> (Claim 13 parts 6-7)

Petitioner asserts that his trial counsel rendered ineffective assistance by failing to request a jury instruction for the lesser included offenses of criminal mischief, criminal trespass, or terroristic threat.  Alternatively, Petitioner asserts counsel should have objected to the jury charge based on the lack of such an instruction.  As Respondent points out, only the offense of criminal trespass could have been reasonably included as a lesser included offense, *see Salazar v. State*, 284 S.W.3d 874 (Tex. Crim. App. 2009), and counsel's request for such an instruction on criminal trespass was denied.  Moreover, Petitioner has not shown that he likely would not have been convicted of burglary if the lesser offense of criminal trespass had been presented.  Thus, this claim is meritless.

J.  <u>Failure to File Motion for Speedy Trial</u> (Claim 13 part 8)

Petitioner asserts that trial counsel rendered ineffective assistance by failing to file a motion for a speedy trial.  (Docket No. 2-1 at 13-14.)  The record shows that Petitioner was arrested and charged on October 11, 2004 (Docket No. 2-1 at 13) and that his trial started on August 10, 2005, just ten months later.  Petitioner states that he asked his trial counsel to file a speedy trial motion but this request was ignored.  (Docket No. 72 at 35.)

In *Barker v. Wingo,* 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed.2d 101 (1972), the Supreme Court established a four-part balancing test for determining whether a defendant received a speedy trial

within the meaning of the Sixth Amendment.   Under *Barker,* a court must consider: (1) the length of the delay; (2) whether the defendant asserted his right; (3) the reason for the delay; and (4) the prejudice to the defendant.   *Id.* at 530.   As a threshold inquiry, the petitioner must demonstrate that the length of the delay is presumptively prejudicial.   *Id.*   "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.*   The Fifth Circuit has held that "[a] delay of less than one year will rarely qualify as 'presumptively prejudicial'" and that "[a]bsent extreme prejudice or a showing of willfulness by the prosecution to delay the trial in order to hamper the defense, a delay of less than one year is not sufficient to trigger an examination of the *Barker* factors." *Cowart v. Hargett,* 16 F.3d 642, 646-47 (5th Cir. 1994).   The Fifth Circuit has also found a delay of ten and one-half months not to be presumptively prejudicial.   *See United States v. Maizumi,* 526 F.2d 848, 851 (5th Cir. 1976).

Because less than one year passed between Petitioner's arrest and trial, and he has not shown any extreme prejudice from the delay or willfulness by the prosecution, it is not necessary to consider each of the *Barker* factors here.   Moreover, Petitioner does not refute Respondent's assertion that Petitioner's counsel agreed to five resets of the trial date, without any objection from Petitioner.   Thus, Petitioner's ineffective assistance claim based on failure to file a speedy trial motion has no merit.

## K.   Failure to Investigate Habeas Claims (Claim 14)

Petitioner asserts that his appellate counsel rendered ineffective assistance by not properly investigating and presenting all possible arguments on appeal.   More specifically, Petitioner asserts that his appellate counsel failed, *inter alia*, to investigate the record, raise ineffective trial counsel claims, investigate Petitioner's prior convictions, argue the insufficiency of the evidence,

and raise a double-jeopardy challenge.   Despite this litany of complaints, Petitioner has not shown a reasonable probability that the outcome of his appeal would have been different but for his appellate counsel's allegedly deficient performance.   *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).   Effective assistance of appellate counsel does not mean that counsel will raise every available non-frivolous ground for appeal.   *Evitts v. Lucey*, 469 U.S. 387, 394 (1985). Instead, a reasonable attorney is only required to research relevant facts and law and make informed decisions as to whether avenues will, or will not, prove fruitful.   *Strickland*, 466 U.S. at 690–91.   Because Petitioner has not shown that his appellate counsel failed to do such research or make such informed decisions, this claim has no merit.

### L.   Improper Agreement to Consolidate Cases (Claim 19)

Petitioner asserts that his trial counsel rendered ineffective assistance by agreeing to consolidation of his criminal cases.   (Docket No. 2-2 at 2-3.)   Petitioner's only basis for this assertion is his contention that the firearm he pleaded guilty to possessing might have been excluded from the burglary trial if the offenses had been severed.   However, Petitioner offers no plausible argument as to why exclusion of the firearm would have been more likely merely because the offenses had been severed; especially given that the firearm was directly relevant to proving the charge of burglary with intent to commit aggravated assault.

Petitioner also asserts that he only pleaded guilty to the firearm charge because he assumed he would receive a single sentence for both convictions.   However, the record shows that Petitioner pleaded guilty to the firearm conviction on August 15, 2005, after he was found guilty on the burglary charge, and after signing admonishments and waivers acknowledging that the prosecution had not agreed to any sentence recommendation.   (Docket No. 13-7 at 75.)

Moreover, Petitioner fails to show any prejudice from the separate sentences because they were ordered to run concurrently.  Thus, Petitioner's consolidation claims have no merit.

M.  <u>Failure to Raise Double Jeopardy or Collateral Estoppel Objection</u> (Claim 20)

Petitioner claims that his trial counsel rendered ineffective assistance by failing to argue that his trial was barred under the Double Jeopardy Clause or the doctrine of collateral estoppel. This claim appears to be a rehash of the double-jeopardy claim addressed above.  *See* Part II, *supra*.  Because Petitioner's double-jeopardy claim was found to have no merit, this claim is also meritless.

N.  <u>Failure to Raise Deadly Weapon Issues</u> (Claims 21-23)

Petitioner claims that his trial counsel rendered ineffective assistance by failing to argue whether a "deadly weapon" was used or exhibited in the commission of the offense (Claim 21). (Docket No. 2-2 at 7.)  More specifically, Petitioner asserts that counsel should have objected to admission of the firearm under Rule 404(b) of the Texas Rules of Evidence, which provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Tex. R. Evid. 404(b).  This rule, however, is not applicable here because the firearm was admitted as direct evidence of the crime with which Petitioner was charged--burglary of a habitation <u>with intent to commit *aggravated* assault</u>--not as character evidence regarding other crimes.   Under Texas Penal Code § 22.02(a) a person commits aggravated assault if he "uses or exhibits a deadly weapon during the commission of [an] assault."  Tex. Penal Code Ann. § 22.02(a) (Vernon 2015).  And "deadly weapon" is defined by statute to include "a firearm . . . ."  *Id.* § 1.07(17).  Thus, counsel did not err by not objecting to the firearm under Rule 404(b).[6]

---

[6] Petitioner also asserts that trial counsel should have challenged the firearm evidence because

Petitioner asserts that counsel should have objected to the trial court's failure to present the issue whether a "deadly weapon" was used in the commission of the crime to the trier of fact before making such an affirmative finding (Claims 22 & 23).  (Docket No. 2-2 at 8-12.)  However, as shown on the Judgment of Conviction, there was no deadly weapon affirmative finding in this case.  (Docket No. 67-29 at 138.)  Moreover, such an affirmative finding would only be relevant to whether Petitioner is eligible for release to mandatory supervision.  *See* Tex. Gov't Code § 508.149(a)(1) (Vernon 2015); Tex. Code Crim. Proc. art. 42.12, § 3g(a)(2) (Vernon 2015).  But Petitioner's conviction for first degree felony burglary under Texas Penal Code § 30.02 automatically makes him ineligible for mandatory supervision even without a deadly weapon affirmative finding.  Tex. Gov't Code § 508.149(a)(13).  Thus, these claims have no merit.

## IV. Denial of Motion to Suppress (Claims 2 & 12)

Petitioner's second and twelfth claims are based on the denial of his motion to suppress the firearm found in his vehicle.  (Docket Nos. 2 at 13-18, 40; 2-1 at 1; 2-2 at 1.)  Petitioner asserts that the warrantless search of his vehicle violated the Fourth Amendment because there was no probable cause or exigent circumstances to justify the search.

It is well established that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Stone v. Powell*, 428 U.S. 465, 494 (1976) (footnote omitted).  The existence of state processes allowing an opportunity for full and fair litigation of Fourth Amendment claims, rather than a defendant's use of those processes, serves the policies underlying the exclusionary rule

---

Petitioner was not specifically charged with use of a "deadly weapon."  However, as previously demonstrated, this argument is completely frivolous because Petitioner was charged with "intent to commit *aggravated* assault" which can include use of a deadly weapon such as a firearm.

and bars federal habeas corpus consideration of claims under *Stone*.   *See Caver v. State of Alabama*, 577 F.2d 1188, 1192-93 (5th Cir. 1978).   The *Stone* bar "applies to all claims arising under the Fourth Amendment," including challenges to an arrest or the seizure of evidence.   *Hughes v. Dretke*, 412 F.3d 582, 596 (5th Cir. 2005).

In this case, Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims and also exercised that opportunity by filing a motion to suppress.   (Docket No. 15-38 at 49-52.)   A hearing was conducted on the motion to suppress mid-trial (3 RR 166-189) and it was denied (Docket No. 15-38 at 52).   Because Petitioner has not shown that he was denied a full and fair opportunity to litigate his Fourth Amendment claims, his habeas claims stemming from the denial of his motion to suppress are subject to the *Stone* bar and have no merit.

## V. Perjured Testimony (Claim 15)

Petitioner asserts that he was denied due process based on the prosecution's reliance upon perjured testimony at trial.   (Docket No. 2-1 at 17-24.)   Specifically, Petitioner contends that Deputy Carroll lied about being able to see a gun from the exterior of the Petitioner's vehicle.   Petitioner's only support for this claim is that Deputy Carroll's testimony conflicts with that of Steve Martinez, Petitioner's friend who was in Petitioner's car at the time he was apprehended, and Juanita Harris, Alejandro's ex-girlfriend.   (Docket No. 2-1, at 18-20 (quoting from 4 RR 100-101, 122-25, 127, 136; 3 RR 160, 164, 167).   Petitioner appears to rely on Martinez's testimony that he did not see a gun in Alejandro's vehicle (4 RR 122, 127, 136) and Harris's testimony that she heard an officer (she does not remember who) say there was no gun and that she told an officer where to find the gun (4 RR 100-101).

Although the use of perjured testimony may violate due process, "[t]o obtain a reversal based upon a prosecutor's use of perjured testimony or failure to correct such testimony, a habeas petitioner must demonstrate that '1) the testimony was actually false, 2) the state knew it was false and 3) the testimony was material.'"  *Pyles v. Johnson*, 136 F.3d 986, 996 (5th Cir. 1998). In this case, Petitioner has not shown that the challenged testimony was actually false.  The mere discrepancy between Deputy Carroll's testimony and that of Martinez and Harris, does not prove that Carroll's testimony was false.  *See Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990) (contradictory testimony merely establishes a credibility question for the trier of fact, and does not suffice to establish that testimony was perjured) (citing *Little v. Butler*, 848 F.2d 73, 76 (5thCir. 1988)).  Nor has Petitioner presented any evidence that the prosecution knew Deputy Carroll's testimony was false but failed to correct it.  Thus, this claim is meritless.

## VI. <u>Invalid Enhancement</u> (Claim 16)

Petitioner asserts that there was insufficient evidence to support his habitual offender enhancement in this case.  (Docket No. 2-1 at 24-28.)  More specifically, Petitioner contends that his 1998 felony DWI conviction in Cause Number 723716 was improperly used to enhance his present conviction.  (Id. at 26.)  This argument, however, appears to be based on a misreading of Petitioner's concurrent indictment for possession of a firearm by a felon, which references the 1998 DWI conviction only as a predicate for the firearm charge, not as a prior offense for enhancement purposes.  (Docket No. 2-2 at 26.)  Moreover, review of the indictment for burglary of a habitation (the only conviction at issue here), shows that the only offenses used to enhance that charge were a different DWI conviction from 1991 (Cause No. 53930) and a 1998 conviction for possession of a firearm by a felon (Cause No. 723717).  Petitioner has not shown that use of either of these convictions for enhancement purposes was improper.  In addition,

Petitioner waived any challenge to these enhancements by entering "true" pleas to each of the alleged enhancement paragraphs.  (Docket No. 15-10 at 8-8; 5 R.R. 5-6.)  *See Randle v. Scott*, 43 F.3d 221, 226 (5th Cir. 1995).  Thus, this claim is without merit.

## VII. Sufficiency of the Evidence (Claim 17)

Petitioner seeks habeas relief on the ground that there was insufficient evidence to support his conviction.  (Docket No. 2-1 at 28-33.)  Respondent asserts that this claim is procedurally defaulted because Petitioner failed to raise it on direct appeal and Petitioner cannot make the required showing to overcome the default.

Ordinarily, a state prisoner seeking federal habeas relief must first "exhaus[t] the remedies available in the courts of the State," 28 U.S.C. § 2254(b)(1)(A), giving those courts "the first opportunity to address and correct alleged violations of [the] prisoner's federal rights." *Coleman v. Thompson,* 501 U.S. 722, 731 (1991).  Exhaustion requires that the prisoner "have fairly presented the substance of his claim to the state courts."  *Nobles v. Johnson,* 127 F.3d 409, 420 (5th Cir. 1997).  "Determining whether a petitioner exhausted his claim in state court is a case- and fact-specific inquiry." *Moore v. Quarterman,* 533 F.3d 338, 341 (5th Cir. 2008) (en banc).

In Texas, a criminal defendant may challenge a conviction by a direct appeal followed by a petition for discretionary review in the Texas Court of Criminal Appeals, or by a petition for writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure in the convicting court, followed by transmittal to the Texas Court of Criminal Appeals once the trial court determines whether findings are necessary.  *See* Tex. Code Crim. Proc. art. 11.07 § 3(c); *see also Busby v. Dretke,* 359 F.3d 708, 723 (5th Cir. 2004) ("Habeas petitioners must exhaust state remedies by pursuing their claims through one complete cycle of either state direct appeal or post-conviction collateral proceedings.").

A federal court generally cannot review the merits of a state prisoner's habeas petition if the petitioner has failed to satisfy the procedural requirements for raising the merits. *See, e.g., Magwood v. Patterson,* 561 U.S. 320, 340 (2010) ("If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention - whether in trial, appellate, or habeas proceedings, as state law may require - procedural default will bar federal review."). A habeas claim can be procedurally defaulted in two ways. *Coleman v. Dretke,* 395 F.3d 216, 220 (5th Cir. 2004), *cert. denied,* 546 U.S. 938 (2005); *Bledsue v. Johnson,* 188 F.3d 250, 254 (5th Cir. 1999). The first is by failing to exhaust available state remedies, and the court to which the petitioner would be required to present his claims to meet the exhaustion requirement would now find the claims procedurally barred. *Williams v. Thaler,* 602 F.3d 291, 305 (5th Cir. 2010). The second is when the claim is presented to the highest available state court but that court has dismissed the claim on an adequate and independent state-law procedural ground instead of deciding it on the merits. *See, e.g., Harris v. Reed,* 489 U.S. 255, 262 (1989). "If a state court clearly and expressly bases its dismissal of a prisoner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for dismissal, the prisoner has procedurally defaulted his federal habeas claim." *Nobles v. Johnson,* 127 F.3d 409, 420 (5th Cir. 1997), *cert. denied,* 523 U.S. 1139 (1998). The state procedural rule must be "both independent of the merits of the federal claim and an adequate basis for the court's decision." *Finley v. Johnson,* 243 F.3d 215, 218 (5th Cir. 2001). A state procedural rule is an adequate basis for the court's decision only if it is "strictly or regularly applied evenhandedly to the vast majority of similar claims." *Amos v. Scott,* 61 F.3d 333, 339 (5th Cir.) (emphasis omitted), *cert. denied,* 516 U.S. 1005 (1995).

Respondent correctly argues that the Petitioner's claim of insufficiency of the evidence was not raised on direct appeal, cannot be raised on state habeas, and is procedurally defaulted at this juncture.  *See Ex parte Grigsby,* 137 S.W.3d 673 (Tex. Crim. App. 2004).  To overcome the procedural bar, Petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S. Ct. 2546 (1991).  To the extent petitioner argues as "cause" the ineffective assistance of appellate counsel in failing to raise the issue, the Court rejects this argument (Part III B., *supra*) Petitioner presents no other grounds for cause that merit relief, and the record does not support a conclusion that failure to consider the claim will result in a fundamental miscarriage of justice.

Moreover, even assuming this claim was not procedurally barred, Petitioner fails to show that the evidence is insufficient to support his conviction.  Under section 2254, habeas relief on a claim of insufficient evidence is appropriate only if it is found that upon the record evidence adduced at trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt.  *Jackson v. Virginia,* 443 U.S. 307, 326, 99 S. Ct. 2781 (1979).  "[A] federal habeas corpus court faced with a record . . . that supports conflicting inferences must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Id.* The Court has independently reviewed the record and finds that the evidence presented at trial was sufficient under *Jackson* to support Petitioner's conviction; therefore, even if this claim were cognizable, Petitioner would not be entitled to habeas relief on a claim of insufficient evidence.

CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted).  Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001).  On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling."  *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).  A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument.  *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability from this decision will not issue.

CONCLUSION

Based on the foregoing, the Court ORDERS that:

1.   Respondent's motion for summary judgment (Docket No. 68) is GRANTED.

2.   Petitioner's federal petition for habeas corpus relief is DENIED.

3.    A certificate of appealability is DENIED.

4.    All other pending motions, if any, are DENIED.

The Clerk will provide a copy to the parties.

SIGNED at Houston, Texas, this 20th day of March, 2015.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE